FILED
2024 Aug-21 PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JOEL HENRY WEHUNT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 6:22-cv-00775-LCB-NAD |
| ERIC DUBIELAK, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Henry Wehunt filed an amended *pro se* complaint seeking injunctive relief and monetary damages under 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 13). On July 25, 2024, the magistrate judge entered a report recommending that the court deny the defendants' motion for summary judgment (Doc. 30), on (1) Wehunt's claim for excessive force against defendant Eric Dubielak in his individual capacity; (2) Wehunt's claim for deliberate indifference to jail conditions against defendants Dennis Hopper and Caden Robinson in their individual capacities; and (3) Wehunt's ADA claim against Dennis Hopper in his official capacity; and that those three claims be referred to the magistrate judge for further proceedings. The magistrate judge further recommended that the court grant the motion for summary judgment on Wehunt's remaining claims.

Defendants Dubielak, Hopper, and Robinson filed timely objections to the report and recommendation. (Doc. 42). The defendants limit their objections to the magistrate judge's recommendations on Wehunt's conditions of confinement claim against Hopper and Robinson in their individual capacities, and his ADA claim against Hopper in his official capacity. (Doc. 42 at 1-2).

Briefly summarized, the undisputed facts relevant to the defendants' objections reflect that Wehunt, a wheelchair-bound inmate at the Lamar County Jail, requested to be placed in A-Block, so he could have access to a telephone, television, and the day room. (Doc. 13 at 12; Doc. 39 at 14). Hopper assigned Wehunt to A-Block. (Doc. 13 at 12). But A-Block had only one handicap-equipped cell, and it was already occupied. (Doc. 13 at 12). The inmate in that cell, also in a wheelchair, agreed to share the cell with Wehunt, but Wehunt had to sleep on the floor of the cell. (Doc. 39 at 15). After about a week and a half, Wehunt asked Robinson to find him a different cell because he was tired of sleeping on the floor and struggled to transfer himself to and from his wheelchair and the floor. (Doc. 39 at 15). Robinson refused, but then told Wehunt to go to cell #4. (Doc. 13 at 12). Cell #4 was not handicap accessible. (Doc. 13 at 12). Because Wehunt lacked access to a handicap accessible toilet at night, the defendants provided him with adult diapers. (Doc. 30-3 at 2; Doc. 39 at 16). But without a working sink, if Wehunt defecated in the diaper during the night, he had to lie in it until the following morning. (Doc. 39 at 16).

2

The defendants offered Wehunt a one-man cell that was handicap accessible, but that cell did not allow Wehunt to be in population, so he would not have access to a phone, television, or other inmates for assistance. (Doc. 30-3 at 2-3).

The defendants' objections concerning Wehunt's conditions of confinement claims are limited to factual challenges. (Doc. 42- at 2-5). In essence, the defendants argue their provisions for the basic necessities in housing Wehunt were reasonable. According to the defendants, "Wehunt already had access to a handicap-accessible cell in A-block, but … he did not want to remain in a cell he had to share with another inmate." (Doc. 42 at 3-4).

The defendants assert that "[t]here is no law entitling Wehunt to his own handicap-accessible cell" (Doc. 42 at 4) and that "Wehunt refused to stay in [a] handicap-accessible cell with [another inmate]" (Doc. 42 at 5). But the relevant inquiry is whether the defendants were deliberately indifferent to Wehunt's conditions of confinement when they relegated Wehunt to sleeping on the floor in order to have access to a handicap accessible toilet.

Viewing all of the evidence in the light most favorable to Wehunt, and drawing all reasonable inferences arising from those facts in Wehunt's favor (*see e.g., Marbury v, Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019)), the evidence could support a finding that the defendants intentionally ignored a substantial risk of serious harm in requiring a wheelchair-bound inmate to sleep on the floor in order

3

to have access to a working toilet. *See e.g., Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) (holding that prisoners have a right "not to be confined . . . in conditions lacking basic sanitation); *see also Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (requiring that a plaintiff must demonstrate that the defendant "actually knew of a substantial risk to inmate health or safety," and with that knowledge, failed to "respond[] reasonably to the risk."). Whether the defendants' actions here were a reasonable response to the risk Wehunt faced is a question of fact, which cannot be resolved on summary judgment.

Hopper and Robinson also defend their decision to place Wehunt in cell #4, asserting that the cell merely did not provide "access to a handicap-accessible toilet at night." (Doc. 42 at 4). However, Wehunt stated under oath that the cell was not handicap accessible. (Doc. 39 at 15). Because Wehunt could not get his wheelchair into the cell, he had to crawl from his bed to the cell door each time he had to leave the cell for meals and showers. (Doc. 13 at 12-13; *see* Doc. 39 at 16). Wehunt further alleged that the toilet and sink in cell #4 did not work; "[n]o water came out of the sink, and there was a trash bag over the toilet." (Doc. 39 at 15).

Again, the relevant inquiry is whether the defendants acted with deliberate indifference to Wehunt's conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 841 (1994) (holding that a prisoner must show "that the official acted or refused to act despite his knowledge of a substantial risk of serious harm."); *Thomas*

4

*v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) ("[T]he evidence must demonstrate that with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions.") (alteration and quotation marks omitted)). This is a factual issue which is not appropriate for summary judgment.

Additionally, whether Hopper's offer to place Wehunt in a one-man cell which was wheelchair accessible, but lacked access to general population, television, and a phone (Doc. 42 at 4), was reasonable is a question of fact. *See Piazza v. Jefferson County, Alabama*, 923 F.3d 947, 952 (11th Cir. 2019) (holding that the "proper inquiry" when "evaluating the constitutionality of conditions or restrictions of pretrial detention" is "whether those conditions amount to punishment of the detainee").

Wehunt's ADA claim also turns on questions of fact. That claim requires a plaintiff to show that the conduct underlying the ADA claim also violated the Constitution. *See e.g., United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that "Title II of the ADA creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment" (emphasis omitted)). The same factual disputes underlying the denial of summary judgment on Wehunt's § 1983 claim also supports the denial of summary judgment on Wehunt's ADA claim.

The defendants conclude that correctional officers are not required "to provide inmates with their own personal handicap-accessible cell. Nor does the law require corrections officials to force inmates to use an available handicap-accessible cell where the inmate refuses to use the cell." (Doc. 42 at 5). But these statements are too narrow a view of the facts before this court. As set forth above and in the report and recommendation, the issue of whether the defendants' provision of access to basic sanitation in housing Wehunt met the constitutional minimum is a question of fact which cannot be decided on summary judgment.[1]

After careful consideration of the record in this case, the defendants' objections, and the magistrate judge's report and recommendation, the court **OVERRULES** the objections, **ADOPTS** the magistrate judge's report, and **ACCEPTS** the recommendation.

Accordingly, the court **GRANTS** summary judgment in favor of defendants Dubielak, Hopper, and Robinson on all of Wehunt's claims **EXCEPT:** (1) Wehunt's claim for excessive force against defendant Dubielak in his individual capacity; (2) Wehunt's claim for deliberate indifference to jail conditions against defendants

---

[1] In their objections, the defendants make passing reference to the denial of qualified immunity. (Doc. 42 at 5). For qualified immunity, a defendant must show that he did not violate a clearly established constitutional right. *Marbury*, 936 F.3d at 1232. Access to based sanitation is a clearly established constitutional right. *Brooks,* 800 F.3d at 1298. So here, the question is whether any "reasonable correctional officer could have concluded that . . . it was constitutionally permissible" to house Wehunt in the conditions he describes. *See Taylor v. Riohas*, 592 U.S. 7, 8-9 (2020). As set forth in the report and recommendation (Doc. 41 at 29-30), under the facts of this case the question of qualified immunity cannot be resolved on summary judgment.

6

Hopper and Robinson in their individual capacities; and (3) Wehunt's ADA claim against defendant Hopper in his official capacity. On those three claims, the court **DENIES** defendants Dubielak, Hopper, and Robinson's motion for summary judgment (Doc. 30).

The court **REFERS** the three remaining claims to the magistrate judge for further proceedings.

**DONE** and **ORDERED** August 21, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE